Austin E. Hedden et al.

*v.*

Charles A. Cowell et al.

A mortgagee of lands, after a release thereof from a prior mortgage, is not bound by alleged fraudulent representations of the mortgagor, whereby the release is said to have been obtained, where such mortgagee has no notice, actual or constructive, of the representations.

Bill to rectify release of mortgaged premises and to foreclose mortgage. On final hearing on pleadings and proofs.

*Mr. J. G. Trusdell,* for complainants.

*Mr. C. T. Glen,* for C. A. and C. E. Cowell.

THE CHANCELLOR.

The controversy in this case is in reference to the lien of the complainants' mortgage upon a strip of land five feet wide by one hundred and twenty-five feet in length, part of premises described in the mortgage, but subsequently, with another part of the property, released by the mortgagee from the encumbrance of the mortgage. The complainants insist that the release was obtained by means of fraudulent representations on the part of the agent of the then owner of the property, and pray that the release be reformed so as to exclude the strip. The premises, as originally mortgaged, were conveyed by the complainants to Mary A. Gilmore, September 5th, 1870, and the mortgage was taken to secure the payment of part of the purchase-money of the conveyance. The premises, as described in the mortgage, were a parcel of land of eighty feet front and rear by one hundred and twenty-five feet in depth, in the township of East Orange, in the county of Essex, lying on Main street, the northeasterly boundary, and bounded on the whole of the southeasterly side, a distance of about one hundred and twenty-five feet, by what is

described in the mortgage as " Burnet street, a road now sur-
veyed and about to be opened from Main street south to Oak
street." Burnet street was not then opened, and it does not ap-
pear that it ever was opened as thus surveyed. On the 26th of
September, 1870, James R. Gilmore, who was the agent of
Mary A. Gilmore, his mother, applied to the complainants and
requested them to release, for the consideration of $1,000, a strip
of twenty-six feet on the southeasterly side of the property, say-
ing that the object in obtaining the release was to change the
location of Burnet street, and representing that, as changed, the
street would form the southeasterly boundary of the premises
which would remain subject to the mortgage after the release.
The consideration of the release was secured to the satisfaction
of the mortgagees, and the release was executed by them. The
description of the land therein makes no reference whatever to
Burnet street, nor does it contain any stipulation or representation
with regard to the proposed street. The release was duly re-
corded, on the 3d of October, 1870. By a deed dated Septem-
ber, 26th, 1870, and recorded October 3d following, Mary A.
Gilmore conveyed to George W. Blackwell, for the consideration
of $1,875, an undivided half of a parcel of land thirty feet
wide, for the new street. The parcel included all of the released
premises except a strip of five feet in width, on the northwest-
erly side thereof. By deed dated September 20th, 1870, and
recorded on the 14th of October following, Mary A. Gilmore
conveyed the mortgaged premises and other land to Amelia B.
Burnet. By an agreement between the latter and George W.
Blackwell, dated September 29th, 1870, and recorded October
3d following, the new street was laid out for the use of the
parties, their heirs and assigns; the agreement providing that
the instrument should not operate as a dedication to public use
nor as divesting either party of his or her title to the land. Sub-
sequently, Amelia B. Burnet married James R. Gilmore, and he
and she, December 22d, 1873, mortgaged to the defendants,
Charles A. and Chauncey E. Cowell, two parcels of land, the
first of which was composed of the premises remaining subject
to the lien of the complainants' mortgage after the release, and

the strip of five feet, the part of the released premises not taken for the new street, and lying between the unreleased part and the new street.   The mortgage was given to secure the payment of $3,268.14, in six months from date, with interest.   By deed dated February 10th, 1874, Gilmore and his wife conveyed to Henry Havell, for the consideration of $6,000, the last-mentioned parcel, being the one as above stated, first described in the Cowell mortgage.   The Cowells subsequently foreclosed their mortgage in this court, making Havell a party to the suit in respect to that deed.   They obtained a final decree, directing that the mortgaged premises be sold, and they were sold accordingly. The complainants were not parties to the suit.   The Cowells bought the property at the sheriff's sale, and the sheriff conveyed it to them by deed dated September 28th, 1875.   December 30th, 1876, Havell granted to the Cowells the premises conveyed to him by Gilmore and his wife.   The Cowells were then, however, the owners of the property under the sheriff's deed.

The fraud imputed, and which is relied upon by the complainants as ground for reforming the release, is Mary A. Gilmore's disregard of her promise and assurance made by her son and agent, James R. Gilmore, that the new street would be so laid out as to constitute the boundary, on the southeasterly side, of the unreleased part of the mortgaged premises.   As before stated, the release is silent on the subject.   There was, therefore, nothing upon the record of the release to give any notice of the existence of the equity which is now claimed.   The Cowells took their mortgage and Havell his deed without any notice of it, actual or constructive.   It is urged, in behalf of the complainants, that the latter had notice by the statement in his deed that the premises thereby conveyed were subject to the complainants' mortgage.   But, manifestly, that statement was not notice that the complainants claimed that the release had been obtained by fraud.   The statement, obviously, was strictly correct, though the complainants' mortgage was upon only part of the premises conveyed.   It is not, however, necessary for, or important to, the decision of the question in hand, to have any recourse to that deed or to make any reference to it, except as a conveyance

of the title of Mrs. Gilmore to the land; and it is a matter of indifference whether Havell had or had not notice. He does not appear to have had any, however, in fact. It is enough to say that the Cowells had no notice whatever of the equity. The bill does not allege that they had any. They are not bound or affected by the equity, and it cannot be enforced against them. The prayer of the bill for reformation of the release must be denied.